[No. 3103.   Nov. 10, 1927.]

UNION STATE BANK OF OMAHA v. DEXTER STATE BANK et al.

[261 Pac. 818.]

R. D. Bowers, of Roswell, for appellant.

Tomlinson Fort, of Roswell, for appellees.

OPINION OF THE COURT

WATSON, J.   The receiver of the Dexter State Bank sued Fred Mielenz upon certain promissory notes. Mielenz had been president of the bank.   As security for existing indebtedness of himself and of several firms in which he was interested, and of future indebtedness, he had given to the bank two warranty deeds which the bank sought to foreclose as mortgages.   The Pacific Mutual Life Insurance Company of California was made a defendant, as the holder of a prior mortgage upon the real estate, and the Union State Bank of Omaha, Neb., was made a defendant upon the allegation that it claimed some interest in the property, which as the complaint alleged, was inferior to plaintiff's claims.

The Union State Bank answered, by way of new matter, that it held some $18,000 of notes executed by one J. H. Emerson, bearing the written guaranty of said Mielenz, and for which it held also the written guaranty of the

Dexter State Bank, that the deeds sought to be foreclosed secured not only the notes held by the Dexter State Bank, but those held by the Union State Bank; and demanded recovery against the former upon the guaranty and priority in the security. By way of counterclaim, it set up the amount of said Emerson notes as money had and received to the use of the Dexter State Bank.

Replying, plaintiff denied the guaranty, and denied that it had had or received to its use, any money from the Union State Bank.

While there were other pleadings and contentions, they become immaterial under our view of the case. The court awarded plaintiff the relief it prayed for, denying relief to defendant and cross-complainant as against plaintiff. The former appeals.

It is apparent from the foregoing that a guaranty by appellee of the notes held by appellant is essential to the latter's case. Assuming the fact of such guaranty, and that the court found such guaranty, appellant's counsel has ably presented a number of important and somewhat difficult questions. The able counsel for appellee, however, does not admit either the fact or a finding of guaranty. That question is therefore first to be determined.

The claim of guaranty arises upon certain correspondence between Mielenz, defendant and president of appellee bank, and his cousin L. M. Mielenz, cashier of the appellant bank; the correspondence being upon the respective letterheads of the banks, and as follows:

"Sep. 26, 1920.

"Mr. L. M. Mielenz, Omaha—Dear Lou: We have a loan of around $20,000.00 coming due the middle of next month, given by J. H. Emerson, of Dexter, secured on cattle. This is the only outside loan we have and the only one we intend to have for quite some time. * * * We were quite anxious for his business at one time when had plenty of money to loan so feel like staying by him as it will undoubtedly be the same way again before a great while. If you want to take on this paper, I will indorse it personally, or take it any way you want it, at an 8% discount; would like to make it six months. Should you take it on, we will close our K. C. account as have no business there any more, and will try and keep a nice balance with you. * * * Let me know about this paper at your earliest convenience.

"Very truly yours,

"Fred Mielenz, President."

"October 1, 1920.

"Mr. F. M. Mielenz, President, Dexter State Bank, Dexter, New Mexico—Dear Fred: * * * I think we can handle the loan which you mention for you, but would a bit rather have only a part of this loan and enough other loans to make up the $20,000.00. However, if you cannot arrange it that way, we will take the full $20,-000.00, but would want you to divide the loan into different maturities, and do not make the last maturity longer than six months. Without doubt, we could carry the loan longer than six months, but we do not want to have a longer maturity than that. * * *

"As ever,                                    L. M. Mielenz, Cashier."

"Oct. 10, 1920.

"Mr. L. M. Mielenz, Cash., Omaha, Neb.—Dear Lou: Your favor received of the 1st; we will draw up the mortgage and four notes of $5,000.00 each, payable in 3, 4, 5 and 6 months respectively, and make them all payable direct to your bank; then I will· indorse each of the notes; we will have a copy of the mortgage filed of record in our county where all the cattle are located as required by our statute which is about the same as yours. Our bank has been holding a mortgage on the ranch for some time and we can leave it just as it is; it is the understanding that our bank is behind this loan and protects me on my indorsement as all the profits of the deal go to our bank and always have. * * * Will get the papers out this week and mail them to you, and will draw on you as we need the money; will give you a nice balance. * * * If above plan is not what you want, wire me exactly as to your plan and will follow it.

"Yours very truly,

"F. M. Mielenz, President."

The transaction was carried out just as outlined in this correspondence; the notes given being signed by John H. Emerson, and bearing the written guaranty of Fred Mielenz. The proceeds of this paper, about $18,000, were, on October 19, charged by appellee bank to appellant bank, and on October 22 credited by the latter to the former. They were drawn out from time to time for the purposes of appellee during the ensuing year and a half. At the time of the transaction Mielenz and Emerson owed some $18,000 to a Kansas City bank. Appellee had no concern in, and was not liable on, that indebtedness. The purpose of the transaction was to pay off the Kansas City notes. That was accomplished October 19 by a draft drawn by appellee upon the Citizens' National Bank of Roswell. The indebtedness in Kansas City being slightly in excess of the proceeds of the Omaha loan, the differenece was charged by appellee to the account of Emerson and Mielenz.

Appellant asked the trial court to make a specific find-

ing that the Dexter State Bank, through its president, Fred Mielenz, guaranteed the Emerson notes to the Union State Bank. This the court refused. At the conclusion of the hearing, the court remarked:

"I think that in the original inception of this transaction that when Mr. Fred Mielenz took up the matter of borrowing the money from the Omaha bank that he was acting in his capacity as president of the bank, or at least he so represented, and referred to the transaction as one for the Dexter State Bank. A finding of fact along that line may be prepared. I fail to find, however, where the Dexter State Bank received any benefits from the transaction. While it is true the Omaha bank did deposit a certain sum of money to the credit of the Dexter State Bank, at the same time, the assets of the Dexter State Bank were depleted for the purpose of paying the individual loan of Emerson and Mielenz and in which the Dexter State Bank had no interest whatever; the Dexter State Bank being at the conclusion of the transaction in the same position as it was in the beginning and had no interest one way or the other."

The views of the court, as thus expressed, were formally embodied in findings 16 and 17. Finding 18 is as follows:

"That the said act of the said Fred Mielenz, as president of the Dexter State Bank, in attempting to guarantee the said paper by the said Dexter State Bank, was an ultra vires act, and was unauthorized by the board of directors of said bank and the laws of the state of New Mexico, and the cross-complainant is not entitled to recover anything from said bank upon its counterclaim herein."

From the court's remark and findings, and his refusal to find, his attitude as to the guaranty is somewhat doubtful. Apparently while unwilling to find as a fact, or conclude as a matter of law, that there was such a guaranty, he assumed it for the purposes of his decision; then holding that, even though there was such a guaranty, the fact that the benefits of the transaction inured entirely to Mielenz and Emerson, and not at all to appellee, was conclusive against the liability of appellee upon an ultra vires guaranty.

The trial court no doubt had in mind the holding of this court in Ellis v. Citizens' National Bank, 25 N. M. 319, 183 P. 34, 6 A. L. R. 166, which case is discussed by both counsel here, and was no doubt relied upon below. It is to be observed that the case at bar is the converse of the Ellis Case. In that case it was represented to the party

claiming the guaranty, and understood by him, that the paper which he was taking over was not owned by the bank, and that the bank was not liable on it—an ultra vires transaction. The bank was estopped from pleading ultra vires, because it was in fact its paper which it, in effect, rediscounted; receiving the benefit from the transaction. In this case it seems, to have been represented to appellant as a rediscount, of which appellee was to receive the benefit; the fact being otherwise. It is plain that liability in the two cases would depend upon different principles. While the fact that the bank received the benefits of the transaction was determinative in the Ellis Case, it does not necessarily follow that the fact that appellee did not receive the benefits would be determinative in this case. That question we need not pursue.

If there was a guaranty, it is to be found within the correspondence above set forth. Reliance is placed upon the third letter, that of October 10, and upon this language:

"Our bank has been holding a mortgage on the ranch for some time, and we can leave it just as it is; it is the understanding that our bank is behind this loan and protects me on my indorsement as all the profits of the deal go to our bank and always have."

We find no guaranty in this expression. In the first letter Mielenz offered to indorse the paper personally; there being no intimation that his bank would assume any liability upon it. In the second letter appellant practically agrees to take the loan with Mielenz' indorsement, without any suggestion or request that appellee make itself liable. In the third letter Mielenz agrees to the conditions mentioned by appellant, says that he will indorse the notes, and then merely remarks that the bank ·is behind the loan and will protect him (Mielenz) on the indorsement. From this correspondence as a whole, appellant was no doubt justified in believing that it was a transaction for the benefit of the bank; but it was not warranted in believing that Mielenz was offering a guaranty on the part of the bank. It was rather chargeable with notice that there was to be no guaranty except by ;Mielenz. The representation that the bank would indemnify Mielenz was a matter in which it had slight, if any, concern. It bargained for the paper of J. H. Emerson, indorsed by Fred Mielenz, and

received exactly what it bargained for. It sues upon paper so signed and so indorsed or guaranteed.

The construction of this contract presents a question of law, appropriate for our consideration. It is determinative of appellant's right to the relief which it was denied. Holding against it on this fundamental proposition, we find that it could not have recovered on any theory. It does not matter, therefore, whether the court, in denying it relief, adopted a correct theory.

It follows that the judgment should be affirmed and the cause remanded for its enforcement. It is so ordered.

PARKER, C. J., and BICKLEY, J., concur.